UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND


BARBARA S. POOLE,
     Plaintiff,

     v.                                  C.A. No. 12-43L

SCOTT P. MACKEY, MINOO
TEHRANI, MICHAEL MELTON,
JOHN DOE 1-10, MARY ROE 1-10,
Individually and in their capacities
as employees and faculty members
and/or administration of Roger Williams
University, and ROGER WILLIAMS UNIVERSITY.


**MEMORANDUM AND ORDER**

     This case is before the Court on the Motion to Dismiss
brought by all Defendants:  Roger Williams University
("University") and three of its faculty members, Scott P. Mackey,
Minoo Tehrani and Michael Melton, and unspecified John Does and
Mary Roes.  Plaintiff Barbara Poole is an Associate Professor of
Finance at the University, and a member of the faculty's
collective bargaining unit.  This lawsuit involves a dispute over
Plaintiff's tenure application.  Plaintiff alleges that, in the
fall of 2008, while she was being reviewed for tenure by the
Faculty Review Committee ("the Committee"), a defamatory and
untrue letter concerning her academic credentials was prepared by
a colleague and submitted to the Committee.  According to
Plaintiff, the allegedly false accusations made in the letter,
along with other procedural missteps made by the Committee,

sabotaged her candidacy and resulted in her being denied tenure in the spring of 2009.  Pursuant to her union contract (the collective bargaining agreement, "CBA" or "the Contract"), Plaintiff filed a grievance and pursued its resolution to arbitration.  In November 2011, the arbitrator made an award in Plaintiff's favor, finding that the University violated the Contract during its review of Plaintiff's tenure application, and ordering that a new committee be convened to take a fresh look at her candidacy.

In her present complaint, Plaintiff claims that her colleagues knowingly libeled her, damaging her career and her prospects for tenure at the University and elsewhere in the larger academic community.  Moreover, she asserts that the University is vicariously liable for the actions of her colleagues.   In their Motion to Dismiss, Defendants argue that Plaintiff's claims are completely preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.  As will be explained below, the Court concludes that Plaintiff's claims are not preempted, and therefore denies Defendants' motion.

## I.  Standard on a Motion to Dismiss

As noted, Defendants move to dismiss the claims against them based on federal preemption.  For purposes of review, the Court will treat this as a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim

upon which relief may be granted.  In considering such a motion, a court must accept as true all allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996).  The United States Supreme Court, in abrogating the frequently-cited <u>Conley v. Gibson</u>, 355 U.S. 41 (1957), restated the standard as follows: "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1969 (2007).

Ordinarily, a court may not consider documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. <u>Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 267 F.3d 30, 33 (1st Cir. 2001).  Courts, however, make an exception "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."  <u>Watterson v. Page</u>, 987 F.2d 1, 3 (1st Cir. 1993).  When a complaint's factual allegations are linked to and dependent upon a document whose authenticity is not challenged, such a document "merges into the pleadings" and the court may properly consider it under a Rule 12(b)(6) motion to dismiss. <u>Alternative Energy</u>, 267 F.3d at 33 (quoting <u>Beddall v. State St.</u>

-3-

Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998)).

In this case, Defendants have submitted, and this Court has reviewed, the Contract between the University and its faculty association, and the November 14, 2011, arbitration award.[1]

## II.   Background

In her six-count complaint, Plaintiff sets forth the following narrative.  She started working as an Associate Professor of Finance at the University in the Fall of 2003.  A colleague, Scott Mackey, Associate Professor of Finance at the University's Gabelli School of Business, approached her in the spring of 2006 about collaborating on a research paper for publication on the subject of hedge funds.  The two worked together for the next year on this article, "Estimating Hedge Fund Investment Sub-Styles," which was eventually published in the spring 2008 issue of the Journal of Business and Economics.  According to Plaintiff, the collaboration went smoothly and Mackey never expressed any dissatisfaction with her contributions or her work.

In October 2008, Plaintiff applied for tenure and a promotion to the post of Professor of Finance.  Consistent with the requirements of the Contract, Plaintiff submitted a "6th Year Self Study and Application for Promotion" to Jerry Dauterive, the Dean of the University's Gabelli School of Business.  Dauterive,

---

[1] American Arbitration Association Case No. 11 300 01928 09.

-4-

in turn, forwarded the application to the Committee.  The
following month, Mackey submitted his letter to the Committee,
addressed to Dauterive, in which he claimed full credit for the
hedge fund article, including all research, data, analysis and
writing.  Moreover, Mackey expressly attacked Poole's
professional integrity.  The letter was written on stationery
with the University letterhead.

   According to Plaintiff, Mackey received support and
assistance on the letter from two members of the Committee, co-
defendants Tehrani and Melton, both faculty members at the
Gabelli School of Business.  According to the factual findings
made by the arbitrator, Dean Dauterive also played a role in
encouraging Mackey to write the letter.  The arbitrator reports
further that Mackey related in an email that he felt his own
prospects for tenure depended on his cooperating with Tehrani and
Melton in the execution of the letter.  At any rate, Plaintiff
asserts that she was not apprised of the letter, and that no
effort was made by the Committee to verify its allegations.

   In December 2008, the Committee issued its recommendation to
Dean Dauterive that Plaintiff be denied tenure, citing her lack
of research as a key factor in its decision.  Dean Dauterive made
a written report to the provost concurring with the Committee's
decision.  The provost concurred with the Committee and the Dean,
and the University's president notified Plaintiff in June 2009

-5-

that she had been denied tenure and the promotion.

In her complaint, Plaintiff claims that she was libeled by the defamatory letter, which was published throughout the University hierarchy with no regard for its truthfulness.  This activity caused her emotional distress, interfered with her current and prospective advantageous business relations, and interfered with her contractual rights to tenure and promotion under the Contract.  She includes the University as a defendant on a theory of vicarious liability, and also asserts that the University was negligent in controlling and overseeing the conduct of its employees.

## III.  Defendants' argument: federal preemption

Defendants argue that the terms of Plaintiff's employment, including the process for seeking tenure and promotions, are governed by the Contract, which covers Plaintiff as well as her Defendant colleagues.  Consequently, Plaintiff's claims must be dismissed based on the preemptive impact of Section 301 of the federal Labor Management Relations Act, 29 U.S.C. § 185, which provides federal jurisdiction for "suits for violation of contracts between an employer and a labor organization..."

In Flibotte v. Pennsylvania Truck Lines, Inc., 131 F.3d 21, 25 (1st Cir. 1997), the First Circuit explained that the Supreme Court has "placed a heavy gloss" on this statutory language, "holding that the statute empowers federal courts to craft

-6-

federal common law reasonably necessary to effectuate the objectives of section 301." Federal common law operates to preempt any state law claim if its resolution involves the interpretation of the collective bargaining agreement. <u>Id</u>. at 26, <u>quoting</u> <u>Lingle v. Norge Div. of Magic Chef, Inc.</u>, 486 U.S. 399, 405-06 (1988). In <u>Lingle</u>, the Supreme Court crafted a two-part test: 1) does the claim allege a breach of duty arising from the collective bargaining agreement? or 2) does the resolution of the claim rely on an interpretation of the collective bargaining agreement? <u>Id</u>. at 26. If the answer to either prong is yes, the claim is preempted.

There are limitations to section 301's preemptive sweep. The First Circuit in <u>Flibotte</u> cited the Supreme Court's admonition that "purely factual questions about an employee's conduct or an employer's conduct and motives do not require a court to interpret any term of a collective-bargaining agreement." 131 F.3d at 26 (<u>quoting</u> <u>Hawaiian Airlines, Inc. v. Norris</u>, 512 U.S. 246, 261 (1994)). Moreover, the necessity of consulting, as opposed to construing, a collective bargaining agreement during litigation does not compel preemption. <u>Lydon v. Boston Sand & Gravel Co.</u>, 175 F.3d 6, 10 (1st Cir. 1999). The <u>Lydon</u> Court continued:

> Courts confronted with state law claims
> must therefore locate the line between the
> need for mere consultation of a CBA, which
> does not demand federal preemption, and more

> active interpretation of that agreement,
> which does preempt state law claims.  As we
> have said of that dichotomy, our premise is
> that this means a *real* interpretive dispute.

175 F.3d at 10 (emphasis in original)(internal quotations

omitted).  The purpose of drawing this line was explained by the

Supreme Court in <u>Livadas v. Bradshaw</u>, 512 U.S. 107 (1994):

> [T]he preemption rule has been applied only
> to assure that the purposes animating § 301
> will be frustrated neither by state laws
> purporting to determine questions relating to
> what the parties to a labor agreement agreed,
> and what legal consequences were intended to
> flow from breaches of that agreement, nor by
> parties' efforts to renege on their
> arbitration promises by "relabeling" as tort
> suits actions simply alleging breaches of
> duties assumed in collective-bargaining
> agreements.

512 U.S. at 122-23 (internal quotations and citations omitted).

In keeping with these objectives, courts have spared from section

301's preemptive sweep claims involving "nonnegotiable rights

conferred on individual employees as a matter of state law."  <u>Id</u>.

at 123.  These rights include constitutional-type rights, such as

the right to be free from certain forms of discrimination, <u>see</u>

<u>Ramirez v. Fox Television Station, Inc.</u>, 998 F.2d 743 (9th Cir.),

as well as other rights traditionally outside the realm of

collective bargaining, such as libel and defamation claims in

some instances.  <u>See Johnson v. Anheuser Busch, Inc.</u>, 876 F.2d

620, 625 (8th Cir. 1989)("...elements necessary to prove the

libel claim against [plaintiff's co-worker] Lewis do not require construction of any term of the collective bargaining agreement); Luecke v. Schnucks Markets, Inc., 356 F.3d 356, 360 (8th Cir. 1996)(claim that employer allegedly disseminated false information about plaintiff not preempted).

## IV.  Plaintiff's claims

Plaintiff's central claim is that Mackey colluded with two members of the Faculty Review Committee, and possibly with Dean Dauterive, to write a letter containing false allegations that effectively torpedoed her tenure candidacy.  Plaintiff's other claims, infliction of emotional distress, tortious interference, negligent supervision and vicarious liability, all stem from this principal allegation.  In order to establish that she was libeled by Defendants, Plaintiff will have to prove that, negligently or wilfully, they circulated a false, defamatory, unprivileged and damaging statement about her.  Kevorkian v. Glass, 913 A.2d 1043, 1047 (R.I. 2007).  If Plaintiff can demonstrate that she was libeled, then she will also have to go on and establish the elements of each prima facie case for her remaining tort claims.

### The **Lingle** test

Commonsense dictates the answer to the first prong of the Lingle test: does Plaintiff's libel claim allege a breach of duty arising from the Contract?  This Court consulted the Contract's Table of Contents and found the pertinent section: Article VIII,

-9-

section B(3)(d) - "Peer Review by School/College Faculty Review Committees." Unsurprisingly, this section does not include an explicit duty to report only truthful information about a colleague. In Rhode Island, every contract includes an implicit duty of good faith. <u>A.A.A. Pool Service & Supply v. Aetna Casualty and Surety</u>, 121 R.I. 96, 98, 395 A.2d 724, 725 (R.I. 1978). Nonetheless, the duty to refrain from spreading damaging lies about a co-worker is not one that arises from the terms of the Contract. The Court concludes that the duty not to circulate falsehoods about a colleague is one that exists in the moral and legal realm, outside the terms of a union contract.

As for the second prong of the <u>Lingle</u> test, the Court is convinced that an analysis of Defendant Mackey's letter, its truthfulness and its impact on Plaintiff's tenure candidacy and reputation, would not require any consultation of the Contract. The issue of the privileged nature of Mackey's letter may possibly be addressed in the Contract; although it is unlikely that any union contract would confer privilege on a co-worker's submission of malicious lies, if indeed, Plaintiff's allegations prove to be true. Either way, the Court concludes that no part of the analysis of Plaintiff's libel claim represents "a *real* interpretive dispute" of the Contract language, as described by the First Circuit in <u>Lydon v. Boston Sand & Gravel Co.</u>, 175 F.3d at 10.

-10-

This Court need not analyze Plaintiff's tort claims for their sufficiency, as Defendants' sole argument at this juncture was that the claims were preempted by federal labor law.  The Court has determined this argument to be unavailing, and so denies Defendants' motion to dismiss.

## V. Conclusion

For the reasons stated above, Defendants' motion to dismiss Plaintiff's complaint is hereby denied.  The Court will at a convenient time place this case on a schedule which will lead to a trial.

It is so ordered.


/s/Ronald R. Laqueux
Ronald R. Laqueux
Senior United States District Judge
September   19  , 2012